UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| CODY MAYNARD,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>M2127 DIRECTOR OF NURSING,<br>Medical Director at Minnehaha County<br>Jail, official capacity,<br><br>　　　　　　　Defendant. | 4:25-CV-04168-KES<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR LEAVE TO PROCEED<br>IN FORMA PAUPERIS AND<br>DISMISSING CASE WITHOUT<br>PREJUDICE UNDER 1915A |

Plaintiff, Cody Maynard, filed a pro se lawsuit alleging a state-law medical malpractice claim against the Medical Director at the Minnehaha County Jail. Docket 1. Maynard also moves for leave to proceed in forma pauperis. Docket 7; Docket 10.

## I.    Motion for Leave to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court, may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)). The initial partial filing fee that accompanies an

installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A) The average monthly deposits to the prisoner's account; or
(B) The average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Because he was only recently incarcerated in the custody of the Bureau of Prisons at the time he filed his original motion for leave to proceed in forma pauperis, Maynard was not able to provide his average monthly deposits and average monthly balances for the past six months, required information in the prisoner trust account report. *See* Docket 8. The court therefore directed Maynard to submit an AO 239 Application to Proceed in District Court Without Prepaying Fees or Costs in lieu of a prisoner trust account report. *See* Docket 9. After reviewing Maynard's financial affidavits, Docket 10, the court finds that he has insufficient funds to pay the filing fee. Thus, Maynard's motion for leave to proceed in forma pauperis (Docket 7) is granted, and the court waives his initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Maynard must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

2

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Maynard's institution. Maynard remains responsible for the entire filing fee as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.     1915A Screening

### A.     Factual Background Alleged by Maynard

The following facts alleged by Maynard are accepted as true for purposes of this screening order under 28 U.S.C. § 1915A.

Maynard alleges that officials at the Minnehaha County Jail caused him to become malnourished through conduct amounting to "gross negligence equivalent to fraud/malice." Docket 1 at 5.

According to Maynard, when he was booked into the Minnehaha County Jail on July 17, 2025, he weighed approximately 140 pounds, which he describes as his normal weight.[1] *See id.* at 5-6. On July 18, 2025, Maynard

---

[1] In his complaint, Maynard provides inconsistent dates for the events giving rise to his claims. *See* Docket 1 at 6 (stating Maynard was booked into jail on July 5, 2025); *id.* at 5 (stating that the events giving rise to his claims began on July 17, 2025). The record in his underlying criminal case reflects that a petition to revoke supervised release and an arrest warrant, both of which led to Maynard's arrest and the events at issue, were filed on July 16, 2023. *See* 4:17-cr-40077-KES, Docket 133. The record therefore supports the July 17, 2023 date alleged in the complaint, rather than July 5, 2023.

3

submitted a sick-call request and was evaluated by jail medical staff. *Id.* at 5. During that visit, Maynard complained of weight loss. Docket 1-1 at 11. In response, medical staff placed him on one Boost nutritional drink per day for 30 days and encouraged him to purchase additional snacks from the commissary to help him gain weight. Docket 1 at 6; Docket 1-1 at 5. Maynard also states that he was told his weight was normal. *Id.*; *see also* Docket 1-1 at 9 (Maynard explaining that medical staff told him he had been gaining weight since being held at the jail.).

Maynard filed two medical grievances on July 18 concerning his alleged malnourishment. Docket 1-1 at 1, 11. He subsequently submitted additional grievances on July 21, July 27, July 28, August 1, August 7, and August 11, 2025, each time requesting to be placed on the list to see a medical provider and asking for additional food portions while awaiting treatment. *See* Docket 1 at 6-8; *see also* Docket 1-1 at 3, 5, 9. In one exchange with a medical administrator, Maynard acknowledged that "it takes up to two weeks to see the provider." Docket 1-1 at 7. In another message, Maynard stated that at intake into the jail, he "was coming off a one month meth[amphetamine] binge[,] so [he] was 124 pounds." *Id.* at 9.

Maynard further alleges that he repeatedly attempted to file grievances seeking additional medical attention, but that jail staff closed the grievances in a manner that prevented him from appealing. Docket 1 at 8. He contends that the actions of the jail medical staff constitute gross negligence and fraud or

malice. *Id.* at 5, 8. Maynard seeks $100,000 in damages, termination of the medical director, and a full pardon for his state and federal charges. *Id.* at 5.

### B.    Legal Standard

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). If the complaint does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota*, 261 F. App'x

926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This court will now assess Maynard's claims under 28 U.S.C. § 1915A.

> ### C.    Legal Analysis

Liberally construing the complaint, the court understands Maynard to assert a state-law claim for negligent medical care or medical malpractice. *See* Docket 1. Because federal courts are courts of limited jurisdiction, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), the court must determine whether Maynard's complaint presents a dispute within its subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Federal courts possess jurisdiction over two primary categories of cases: First, diversity cases, which are suits between citizens of different States as to any matter valued at more than $75,000. And second, federal-question cases, which are suits "arising under" federal law." *Badgerow v. Walters*, 596 U.S. 1, 8 (2022); 28 U.S.C. § 1332(a); 28 U.S.C. § 1331.

Maynard, a citizen of South Dakota, Docket 10 at 5, sues the Medical Director at Minnehaha County Jail in her official capacity, *see* Docket 1. For

diversity purposes, a political subdivision of a state is ordinarily considered a citizen of that state unless it is merely an arm of the state. *See Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973). Because Maynard is also a citizen of South Dakota, he has not established diversity jurisdiction. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff.").

Maynard also fails to establish federal-question jurisdiction because, liberally construed, his complaint only asserts a state-law medical malpractice claim, which does not arise "under the Constitution, laws, or treaties of the United States[.]" 28 U.S.C. § 1331.

Additionally, because Maynard alleges no claim within the court's original jurisdiction, the court cannot exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) ("[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

Although Maynard characterizes the conduct as "gross negligence," negligence or medical malpractice, that does not establish a constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1076) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Maynard's allegations reflect disagreement with the adequacy and timing of his treatment, not deliberate indifference to a serious medical need.

By his own allegations, medical staff evaluated him, provided nutritional supplements, responded to his grievances, and advised him regarding further care. Thus, the complaint, even liberally construed, does not plausibly allege a federal constitutional claim under 42 U.S.C. § 1983. Maynard must pursue his medical malpractice claim, if at all, in state court.

Even if Maynard were attempting to assert a deliberate indifference claim under the Eighth Amendment, that claim would fail. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at  104 (internal citation omitted) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). This standard applies to prison officials' responses to medical needs, including both medical personnel and correctional staff. *Id.* at 104-05. But not every claim of inadequate medical treatment rises to the level of a constitutional violation. *Id.* at 105. Allegations of negligence will not suffice, nor will "mere disagreement with treatment decisions." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Est. of Rosenberg*, 56 F.3d at 37).

Here, Maynard sues only the Medical Director at Minnehaha County Jail in her official capacity. Docket 1 at 2. "A suit against a government officer in [her] official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, Maynard's claim is properly treated as one against Minnehaha County. *See* Docket 1.

But "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, county liability attaches only where the alleged constitutional violation results from an official policy, custom, or practice of the governmental entity. *See Marquez v. Peterson*, 2025 WL 815208, at *4 (D.S.D. Mar. 13, 2025); *see also Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). Because Maynard does not allege that any policy or custom of Minnehaha County caused the alleged deprivation of medical care, his official-capacity claim necessarily fails. Thus, the claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[2]

### III. Conclusion

Thus, it is ORDERED:

1. That Maynard's motion for leave to proceed in forma pauperis (Dockets 7, 10) is granted.

---

[2] Maynard may have been a federal pretrial detainee at the time of the events giving rise to this complaint. Although the Eighth Amendment does not apply until after a formal adjudication of guilt, the Fifth Amendment affords federal pretrial detainees protections at least as great as those available to convicted prisoners under the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Because the Eighth Circuit has not adopted a distinct standard for evaluating pretrial detainees' inadequate medical care claims, such claims are analyzed under the same deliberate indifference standard applicable to convicted prisoners' Eighth Amendment claims. *Davis v. Hall*, 992 F.2d 151, 152-53 (8th Cir. 1993) (per curiam). Under this standard, Maynard's allegations are insufficient to state a constitutional claim.

2. That the Clerk of Court shall send a copy of this order to the appropriate financial official at Maynard's institution.

3. That the institution having custody of Maynard is directed that whenever the amount in Maynard's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Maynard's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

4. That Maynard's medical malpractice claim against defendant is dismissed without prejudice for lack of subject matter jurisdiction.

5. That to the extent Maynard intended to allege a deliberate indifference to serious medical needs claim, that claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Dated May 15, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

10